UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROBIN COOPER, individually and on behalf of all others similarly situated,

                Plaintiff,

v.

PEOPLES BANK,

                Defendant.

Case No. 3:23-cv-00389-GNS

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The Court should enter the tendered agreed Preliminary Approval Order because the Settlement Class meet the requirements for class certification and because the benefits under the Class Action Settlement Agreement (the "Settlement"), attached as Exhibit 1 to the Declaration of Marty Schubert (the "Schubert Declaration"), are substantial and well within the range of a fair, reasonable, and adequate compromise.[1] Under the Settlement, Defendant will pay $950,000 into a Settlement Fund and forgive not less than $164,729 in outstanding uncollected fees. The Net Settlement Fund will then be distributed to Settlement Class Members on a pro rata basis based on the number of Challenged Fees each Settlement Class Member paid. Settlement Class Member Payments will be made automatically, by account credit or check, without the need for any claim to be made. The Settlement is the result of arm's-length negotiations facilitated by a neutral third-party mediator after significant litigation, and the Court should grant Preliminary Approval, which is unopposed, so that Notice of the Settlement can be sent to the Settlement Class, Settlement Class Members can object to or opt-out if they so choose, and the Court can hold a Final Approval

---

[1] Capitalized terms have the definitions set forth in the Settlement, unless otherwise defined.

1

Hearing to consider whether to grant Final Approval so that the Settlement Class Members can receive the benefits of the Settlement and this Action can be resolved through the Settlement.

## FACTS

**I.      Overview of Lawsuit.**

On May 3, 2023, Plaintiff filed this action in the Jefferson Circuit Court, alleging breach of contract, including the duty of good faith and fair dealing, unjust enrichment and violations of the Kentucky Consumer Protection Act (KRS §§ 367.110 – 367.300) (the "KCPA"), for the assessment of $35 overdraft fees on debit card transactions authorized on sufficient funds (the "Authorize Positive, Settle Negative (APSN) Claim") by Limestone Bank, which was acquired by Defendant on May 1, 2023. On July 6, 2023, Plaintiff amended the complaint and, on July 28, 2023, Defendant removed this action to this Court. On December 13, 2023, Plaintiff amended the complaint again to allege a claim for the assessment of $35 fees on phantom transactions (the "Verify Bank Claim"). The parties engaged in discovery pursuant to the Court's scheduling order and, on October 10, 2024, Plaintiff took the corporate representative deposition of Plaintiff. On December 17, 2024, the parties engaged in a full-day arms' length mediation with the Hon. Ann Shake (Ret.). At mediation, the parties reached an agreement in principle to settle this action and signed a binding Term Sheet, subject to negotiating a final detailed Settlement Agreement, which is now fully executed at attached to the Schubert Declaration as Exhibit 1.

**II.     The parties reach a proposed Settlement that provides, among other things, for a non-reversionary $950,000 Settlement Fund.**

Under the terms of the Settlement:

- Defendant will pay $950,000 into a non-reversionary Settlement Fund;

- Defendant will forgive all Limestone Bank customers who have outstanding uncollected Challenged Fees ("Debt Forgiveness").

- The Settlement also provides significant going forward benefit to the Class Members: Defendant Peoples Bank, the successor-in-interest to Limestone Bank, will no longer assess APSN Fees and, with respect to Verify Bank Fees, is engaging with its core processing provider to confirm whether Defendant can also cease the assessment of Verify Bank Fees.

- The Net Settlement Fund will be paid out to Settlement Class Members on a pro rata basis based on the number of APSN Fees and Verify Bank Fees ("Challenged Fees") each Class Member paid to Limestone Bank;

- Payments to Settlement Class Members will be automatic—by account credit to current customers and by check to former customers—without the need to submit a claim;

- Any undistributed residual funds, after a possible second distribution, will not revert to Defendant but will instead be paid on a *cy pres* basis to a Court-approved recipient, with the Parties agreeing to propose USA Cares, a national 501(c)(3) based in Kentucky that provides post-9/11 military veterans, service members, and their families with financial assistance and post service skills training.

- Defendant will not oppose certification of the Settlement Class, defined as:

    - The APSN Class: All Limestone Bank accountholders who, from May 3, 2013 to April 30, 2023, were assessed an overdraft fee on a debit card transaction that was authorized on sufficient funds and settled on negative funds in the same amount for which the debit card transaction was authorized.

    - The Verify Bank Class: All Limestone Bank accountholders who, from May 3, 2013 to April 30, 2023, were charged a fee as a result of a verification process on their account in which a third-party deposited and debited minimal amount of equal funds in less than 24 hours.

- Excluded from the Settlement Defendant's current and former officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns, along

    with all judges who have presided over this matter and their immediate families and judicial staff.

- In exchange for the benefits to the Settlement Class Members, Defendant will receive a release as set forth in the proposed Final Approval Order attached to the Settlement Agreement.

## LEGAL STANDARD

Public policy strongly favors the settlement of disputes without litigation. *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009). Accordingly, settlement agreements should be upheld whenever equitable and policy considerations so permit. *Id*. This is especially true in class action litigation, in which there is a "particularly muscular" presumption in favor of class action settlements. *Whitlock v. FSL Mgmt., LLC*, 842 F.3d 1084, 1094 (6th Cir. 2016) (quoting *Ehrhart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010)); *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp..*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010).

Parties settling a class action must seek approval of the settlement from the Court. Fed. R. Civ. P. 23(e). In the Sixth Circuit, there is a three-step process for approving class action settlements: (1) the court preliminarily approves the proposed settlement; (2) the class members receive notice of the proposed settlement; and (3) after a hearing, the court finally approves the settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001). Under Rule 23(e)(2), at the final approval stage, the Court ultimately must determine that the settlement is "fair, reasonable, and adequate." The Court has broad discretion in evaluating a class action settlement. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001).

At the preliminary approval stage, the Court's review is not exacting. The Court's role is simply to evaluate whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *In re Skechers Toning Shoe Prods. Liab. Litig.*, 2012 WL 3312668, at *8 (W.D. Ky. Aug. 13, 2012); *Hyland v. HomeServices of Am., Inc.*, No. 05-cv-612, 2012 WL 122608, at *2 (W.D. Ky. Jan. 17, 2012) (citing *Tenn. Assoc. of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001)). If so, the class members will receive notice of the Settlement, and the Court will hold a final approval hearing at which it can make a final determination as to whether the settlement is fair, reasonable, and adequate under all of the circumstances, based on a full record. *See* MANUAL FOR COMPLEX LITIGATION, § 13.14, at 173 (4th ed. 2004).

The question for the Court to resolve is "simply whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending potential class members notice and processing opts-outs and objections." *Hillson v. Kelly Servs.*, Case No. 2:15-cv-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017). Accordingly, at the preliminary approval stage, "the bar to meet the 'fair, reasonable, and adequate' standard is lowered[.]" *In re Regions Morgan Keegan Secs.*, No. 08-cv-2260, 2015 WL 11145134, at *3 (W.D. Tenn. Nov. 30, 2015); *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001268, at *4 (W.D. Tenn. Apr. 30, 2015).

**I.     The Court should grant preliminary approval to the Settlement.**

The terms of the Settlement are well within the range of possible approval, and therefore the Settlement should be preliminarily approved. Defendant has agreed to make a significant settlement payment of $950,000 and forgive not less than $164,729 in outstanding uncollected fees; the Settlement was reached after discovery and the deposition of Defendant's corporate

representative; the Settlement is the result of arm's-length negotiations overseen by a very experienced mediator, Judge Ann Shake (Ret.); and Class Counsel is highly experienced in litigating class action and complex litigation generally and bank fee litigation specifically. The Settlement also provides significant going forward benefit to the Class Members: Defendant Peoples Bank, the successor-in-interest to Limestone Bank, will no longer assess APSN Fees and, with respect to Verify Bank Fees, is engaging with its core processing provider to confirm whether Defendant can also cease the assessment of Verify Bank Fees.

This result is particularly favorable given the risks of continued litigation. Plaintiff faced serious risks prevailing on the merits, at class certification and at trial, and surviving appeal. A settlement today not only avoids the risks of continued litigation, it provides a benefit to Class Members now as opposed to after years of risky litigation. The Settlement unquestionably provides a favorable result to Class Members, placing the Settlement well within the range of possible approval; therefore, the Court should grant preliminary approval of the Settlement.

## II. The Court should certify the Class for purposes of Settlement.

To begin the approval process, the Court should also certify the Settlement Class so that notice of the proposed Settlement can be delivered to the Settlement Class for consideration, comment and exclusion purposes. Pursuant to the Settlement, Fed R. Civ. P. 23(a) and 23(b)(3), the Court should certify the following Settlement Class:

- The APSN Class: All Limestone Bank accountholders who, from May 3, 2013 to April 30, 2023, were assessed an overdraft fee on a debit card transaction that was authorized on sufficient funds and settled on negative funds in the same amount for which the debit card transaction was authorized.

- The Verify Bank Class: All Limestone Bank accountholders who, from May 3, 2013 to April 30, 2023, were charged a fee as a result of a verification process on their account in which a third-party deposited and debited minimal amount of equal funds in less than 24 hours.

Under Fed R. Civ. P. 23(a), a litigant seeking to certify a class must first show:

(a) the class is so numerous that joinder of all members is impracticable;

(b) there are questions of law or fact common to the class;

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and;

(d) the representative parties will fairly and adequately protect the interest of the class.

In addition, one of the three requirements of Fed. R. Civ. P. 23(b) must be met; here, the applicable standard is that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As set forth below, this case meets the requirements of Fed. R. Civ. P. 23(a) and b(3) and therefore the Court should certify the Settlement Class.

### A. Numerosity.

That joinder is impracticable is presumably self-evident. There is no hard and fast number of plaintiffs that makes joinder *ipso facto* impracticable. "The facts of the case guide a court's determination that the class is sufficiently large to make joinder impractical." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Here, thousands of Defendant's members have been subject to the Challenged Fees. Without question, individual trials to determine the proper operation of Defendant's account documents would make no sense. The numerosity requirement is plainly satisfied.

### B. Commonality and Typicality.

Plaintiff's claims are common to, and typical of, those of the Settlement Class – indeed, they are identical for all material purposes. These requirements - commonality and typicality – "'tend to merge [because] both serve as guideposts for determining whether under the particular

7

circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, n.5 (2011).

To demonstrate commonality, "there must be questions of law or fact common to the class" and, to demonstrate typicality, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-(3). Here, the controversy turns on core legal issues of contractual interpretation common to all Class Members arising from Defendant's assessment of the Challenged Fees. The Class Representative and every member of the Settlement Class have been subjected to the Challenged Fees by Limestone Bank, which are assessed pursuant to uniform fee assessment practice and account documents. There is simply no justiciable basis for distinguishing one customer of Limestone Bank from another. For these reasons, the commonality and typicality requirements are plainly met.

### C. Adequacy

> Class representatives are adequate when it "appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel," *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir.1976), which usually will be the case if the representatives are "part of the class and possess the same interest and suffer the same injury as the class members," *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (internal quotation marks omitted). Because named class members must act through class counsel, adequacy of representation turns in part on "the competency of class counsel" and in part on the absence of "conflicts of interest."

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007). The Class Representative's interests in this litigation are entirely aligned to those of all other members of the proposed Settlement Class. The Class Representative and all Class Members were charged the Challenged Fees and are subject to the same account documents. As such, all Class Members will benefit in a like manner. Plaintiff has also vigorously

8

prosecuted this action by retaining Stranch, Jennings & Garvey, PLLC and CohenMalad, LLP, firms with extensive experience litigating major class action litigation in state and federal courts throughout the United States, including bank fee class actions. *See, e.g., Stillgood Prods., LLC v. Wesbanco Bank, Inc.*, No. 4:21-cv00018-SEB-DML (S.D. Ind. Dec. 16, 2022), ECF No. 58 (CohenMalad, LLP ("CM") and Stranch, Jennings & Garvey, PLLC (through its predecessor law firm, Branstetter, Stranch & Jennings, PLLC) ("SJG") obtain final approval of $6.45 million bank fee class settlement); *Terrell et al. v. Fort Knox Fed. Credit Union*, No. 19-CI-01281 (Hardin Cir. Ct., Ky. 2020) (CM and SJG obtain $4.5 million bank fee class settlement); *Darty v. Scott Credit Union*, No. 19L0793 (Ill. Cir. Ct. Jul. 13, 2022) (CM and SJG obtain $5,575,000 bank fee settlement).

    **D.**    **Predominance and Superiority.**

"Class-wide issues predominate if resolution of some of the legal or factual questions for class-wide resolution can be achieved using generalized proof, and if these particular issues are more substantial than those requiring individualized proof." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 268 (E.D. Ky. 2009). To address the superiority requirement, courts may look to whether (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id*. at 269.

Here, a class-wide resolution can clearly be achieved using generalized rather than individualized proof because the core issue of contractual interpretation that entirely governs the outcome of this case is common to each and every Class Member, each of whom was assessed a Challenged Fee. And a class action is clearly the superior method of adjudicating the present claims

9

for all parties as Limestone Bank's customers need not bring individual actions to obtain relief and Defendant can resolve all members' claims through the Settlement. For these reasons, the predominance and superiority requirements are met; therefore, the Settlement Class should be certified for purposes of notice and Settlement.

    **III.    The Court should approve the form and method of notice of the Settlement to the Settlement Class.**

The Settlement also sets forth a comprehensive method of providing notice of the Settlement to Class Members. The Settlement provides for direct emailed or mailed notice to all Class Members. (Settlement § 5.3.) The notice forms, attached as Exhibit A and Exhibit B to the Settlement, "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion by a specified date; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment, whether favorable or not, on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The proposed forms and method of notice provide "the best notice that is practicable under the circumstances" as they are likely to reach Class Members and inform them of their rights in a clear manner. *Id*. The Court should therefore approve the proposed forms and manner of notice and direct their issuance according to the terms of the Settlement.

    **IV.    The Court should approve the deadlines for Class Members to object or opt-out of the Settlement.**

As part of the Settlement, Class Members have the right to (a) do nothing and receive the benefits of the Settlement in exchange for a release of their claims, if the Settlement receives final approval; (b) exclude themselves from the Settlement if they do not wish obtain the benefits of the Settlement or release their claims; or (c) remain part of the Settlement Class but object to the

10

Settlement. (Settlement §§ 3.1, 5.4, 5.5.) Class Members have thirty (30) days from the date that notice is sent to them to decide among these options. (Settlement §§ Schedule of Dates and Deadlines.) This is a reasonable amount of time for Class Members to make an informed decision while also not unduly delaying consideration of final approval for Class Members who wish to timely receive the benefits of the Settlement. Therefore, the Court should approve this as the opt-out and objection deadline.

V. **The Court should set a date for the final approval hearing in November 2025.**

A final approval hearing must be held after notice has been given to the Settlement Class and Class Members have had an opportunity to opt-out of or object to the Settlement. While Class Members generally do not appear at the final approval hearing, the notice to Class Members includes this date, and Class Counsel and counsel for Defendant will appear to further explain why the Settlement should be granted final approval. It is common for the final approval hearing to be set shortly after the deadline for Class Members to object or exclude themselves from the Settlement. Therefore, Plaintiff requests that the Court set a final approval hearing in November 2025.

## CONCLUSION

For the foregoing reasons, the Court should enter the tendered Preliminary Approval Order, which: (1) certifies the Settlement Class for purposes of Settlement; (2) appoints Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel for the Settlement Classes; (3) grants Preliminary Approval to the Settlement; (4) approves the forms of and directs Notice of the proposed Settlement to the Settlement Class; (5) establishes deadlines for Potential Settlement Class Members to object to or opt-out of the Settlement; and (6) requests that the Court schedule a Final Approval Hearing in November 2025, or as soon thereafter as the Court is available. A proposed Preliminary Approval Order is attached.

Respectfully Submitted on 7/23/2025,

/s/ Martin F. Schubert
Andrew Mize (Ky. Bar No. 94453)
J. Gerard Stranch, IV, *pro hac vice*
Martin F. Schubert, *pro hac vice*
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
mschubert@stranchlaw.com
amize@stranchlaw.com

Lynn A. Toops, *pro hac vice*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com

*Counsel for Plaintiff and the Putative Classes*

## CERTIFICATE OF SERVICE

It is hereby certified that on 7/23/2025, a copy of the foregoing was filed via the CM/ECF system, which will electronically serve the following:

Arie Moshe Spitz, *pro hac vice*
DINSMORE & SHOHL LLP
707 Virginia St E, Suite 1300
Charleston, WV 25301
Telephone: (304) 357-9971
Facsimile: (304) 357-0919
arie.spitz@dinsmore.com

Joseph N. Tucker
Annie Stewart Myers
DINSMORE & SHOHL LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
Telephone: (502) 540-2300
Facsimile: (502) 585-2207
joseph.tucker@dinsmore.com
annie.stewart@dinsmore.com

*Counsel for Defendant Peoples Bank*

*/s/ Martin F. Schubert*
Martin F. Schubert, *pro hac vice*
*Counsel for Plaintiff*