UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00389-GNS

ROBIN COOPER, individually and on
behalf of all others similarly situated                                    PLAINTIFFS

v.

LIMESTONE BANK, INC. et al                                                 DEFENDANTS

**MEMORANDUM OPINION AND ORDER**
**GRANTING PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**

This matter is before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (DN 72) and Plaintiff's Motion for Hearing (DN 83).[1]  The motions are ripe for adjudication.

## I.     BACKGROUND

### A.     Factual and Procedural History

This is a class action arising from the imposition of certain fees by Limestone Bank, Inc. ("Limestone").  (2d Am. Compl. ¶ 1, DN 31).  The suit challenges two types of overdraft fees: those from "Authorize Positive, Settle Negative Transactions" ("APSN Fees"), and those from merchant verifications ("Verify Fees") (jointly, "Challenged Fees").  (2d Am. Compl. ¶¶ 16, 83-87).

---

[1] While the motion for preliminary approval was pending, Plaintiff moved for a hearing on the motion; because a hearing unnecessary, the motion for a hearing is denied as moot.

APSN Fees were allegedly charged by Limestone in the following manner:  First, a customer with a positive account balance would use her debit card to make a purchase covered by the funds in her account.  (2d Am. Compl. ¶¶ 17-19).  Limestone then sets aside the amount of that transaction in the customer's checking account, making a corresponding deduction in that customer's "available balance."  (2d Am. Compl. ¶ 17).  Next, the "secret step" in the posting process occurred:  Limestone would release the funds it had set aside back into the customer's account for a split second before the funds were debited to settle the first transaction.  (2d Am. Compl. ¶¶ 58-59).

Because of that "secret step," a problem could arise if the customer conducted a subsequent transaction and overdrafted her account before the first transaction settled.  If the customer's account was negative when the funds set aside for the first transaction were released and near-instantaneously debited from her account, those funds would first cover the overdraft fee for the subsequent transaction—only the remainder would go toward settling the first transaction.  (2d Am. Compl. ¶ 58).  This would cause *another* overdraft because there were then insufficient funds to cover the first transaction.  (2d Am. Compl. ¶ 59).  So, the customer would be charged an overdraft fee on the first transaction, despite Limestone's indication that the customer had enough funds to cover the transaction when it was initiated.  (2d Am. Compl. ¶ 23).

Verify Fees were allegedly charged by Limestone following attempts by e-merchants to confirm the validity of Limestone customers' accounts.  (2d Am. Compl. ¶ 84).  In order to verify a customer's account, various e-merchants would deposit and then immediately withdraw a token sum in the customer's account.  (2d Am. Compl. ¶ 85).  This process involved` no actual purchase or payment, but Limestone would charge an overdraft fee if the customer had a negative account balance when the verifications occurred.  (2d Am. Compl. ¶¶ 86-87).

2

The named plaintiff, Robin Cooper ("Cooper"), was charged both Challenged Fees while she held an account at Limestone.  (2d Am. Compl. ¶¶ 78-79, 92-93).  She brought this action against Limestone on behalf of herself and other similarly situated individuals, alleging breach of contract and violations of the Kentucky Consumer Protection Act ("KCPA") and Regulation E of the Electronic Fund Transfers Act ("Regulation E").  (2d Am. Compl. ¶ 3).  Cooper later added People's Bank ("PB") as a defendant and dismissed Limestone because Limestone had merged with PB.  (Notice Removal 2, DN 1).

Following discovery, mediation, and many months of negotiation, Cooper and PB ("the Parties") reached a settlement agreement.  (Pl.'s Unopposed Mot. Prelim. Approval 1, DN 72 [hereinafter Mot. Prelim. Approval]; Schubert Aff. ¶ 3, DN 72-1).  The Parties now ask the Court to certify the class, appoint a class representative and class counsel, and grant preliminary approval to their proposed settlement agreement ("Agreement").  (Mot. Prelim. Approval 1).

### B.    Proposed Settlement Agreement

#### 1.    *Class Membership*

The Agreement defines the term "Settlement Class" as:  "All persons who were charged one or more Challenged Fees by Limestone Bank during the Class Period."  (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 3, DN 72-2).  This class specifically excludes "Limestone Bank's current and former officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns, along with all judges who have presided over this matter and their immediate families and judicial staff."  (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 3).

#### 2.    *Class Benefits*

Class members will share in a settlement in the amount of $950,000.  (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 3). Limestone will also forgive the outstanding debts of its

customers that are related to Challenged Fees. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 3). Current Limestone account holders will receive their share of the settlement as a credit to their accounts. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 7). Those without accounts will receive their share of the settlement via check. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 7).

### 3. *Waiver*

The Agreement states that class members will be bound by the terms of a release that will be set forth in the court's final approval order. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 9).

## II. JURISDICTION

The Court has subject-matter jurisdiction because a federal question is presented. *See* 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

## III. DISCUSSION

In ruling on Plaintiff's unopposed motion, the Court must determine whether to preliminarily certify the class under Fed. R. Civ. P. 23(a) and 23(b) and approve the class representatives and class counsel. The Court must also determine whether a proposed settlement agreement is fair, adequate, and reasonable. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007).

### A. Class Certification

Before any settlement is approved, the class must be certified. "While the district court has broad discretion in certifying class actions, it must exercise that discretion within the

framework of Rule 23." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002) (citing *Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977)). As the moving party, the plaintiff bears the burden of proof to establish that certification is proper. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976)).

Class certification involves a two-step process: First, a court must conduct "a rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161. Those prerequisites are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Each requirement must be satisfied for the class to be certified. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)). Second, if the class meets all four Rule 23(a) requirements, the parties must also demonstrate that "the proposed class . . . meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citations omitted).

The merits of the underlying claims are not considered in determining whether to certify a class; courts assume that the complaint's substantive allegations are true and that the pleading states cognizable claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (citation omitted)); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997) ("A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claims." (citation omitted)). "Nonetheless, the Court must undertake an analysis of the issues and the nature of

required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or are susceptible of common proof equally applicable to all class members." *Little Caesar Enters.*, 172 F.R.D. at 241. "[W]hen a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class." *Id*. at 241-42 (citations omitted).

### 1.    *Rule 23(a) Requirements*

#### a.    **Numerosity**

The first requirement for class certification is that "the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). As the Sixth Circuit has explained:

> There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citation omitted) (citation omitted); *see also In re Am. Med Sys.*, 75 F.3d at 1079 ("There is no strict numerical test for determining impracticability of joinder." (citation omitted)).

In this instance, the class includes "[a]ll persons who were charged one or more Challenged Fees by Limestone Bank during the Class Period." (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 3). This broad definition and Limestone's significant customer base means that there are thousands of potential class members. (Pl.'s Mem. Supp. Mot. Prelim. Approval 7, DN 73). Joinder of every potential class member would be impracticable, if not impossible. Thus, the proposed settlement class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

#### b.    **Commonality**

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) speaks of 'questions' in the

plural, . . . there need only be one question common to the class." *Sprague*, 133 F.3d at 397 (citing *In re Am. Med Sys.*, 75 F.3d at 1080). As the Supreme Court has stated, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Falcon*, 457 U.S. at 157). "The claims of the class members must depend upon a common contention [that] . . . 'must be of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Powell v. Tosh*, 280 F.R.D. 296, 305 (W.D. Ky. 2012) (alteration in original) (quoting *Dukes*, 564 U.S. at 350). Thus, the point of the commonality analysis is to determine "common issue[s] the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397.

In this instance, the potential class members' injuries all arise from the imposition of one or both Challenged Fees. (Pl.'s Mem. Supp. Mot. Prelim. Approval 8). The injury to an individual class member is equal to the dollar value of Challenged Fees imposed. Thus, the common issues at trial would be whether the imposition of Challenged Fees was in breach of contract and in violation of federal and state law. Therefore, the commonality requirement in Fed. R. Civ. P. 23(a)(2) is satisfied.

### c.    Typicality

Third, a court must consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399 (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise

to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter*, 532 F.2d at 525 n.31 (citation omitted). "On the other hand, . . . the typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody's else's claim.'" *Beattie*, 511 F.3d at 561 (quoting *Sprague*, 133 F.3d at 399).

The claims asserted by Cooper are typical of the potential class because the claims all arise out of the imposition of Challenged Fees. Cooper's arguments—that the imposition of these fees breached the contract between Limestone and its customers and violated Regulation E and the KCPA—can be asserted by all potential class members. The class members will have suffered virtually identical injuries, the only difference being the amount of damages based on the amount of Challenged Fees imposed. Accordingly, the typicality requirement of Fed. R. Civ. P. 23(a)(3) is also satisfied.

### d.    Adequacy of Representation

The fourth consideration is whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 524-25 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)).

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. '[A] class representative must be part of the

class and "possess the same interest and suffer the same injury" as the class members.'" *Amchem Prods.*, 521 U.S. at 625-26 (alteration in original) (internal citation omitted) (citation omitted).

As part of the Agreement, Cooper has been designated as class representative. (Mot. Prelim. Approval Ex. 1, at 3). The injuries alleged by Cooper are substantially the same as the potential class's injuries—all arise from the same overdraft fees. The alleged injuries are limited to the amount of Challenged Fees imposed on each potential class member. (2d Am. Compl. ¶¶ 154-155). While imposed fees may vary between potential class members, each suffered injury by the same mechanism. (Pl.'s Mem. Supp. Mot. Prelim. Approval 8-9). Accordingly, Cooper shares common interests with the members of the proposed class.

Fed. R. Civ. P. 23(a)(4) also requires a court to consider the adequacy of the named plaintiff's representation "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation . . . ." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted). A plaintiff's choice of counsel "should negatively impact [a court's] determination of adequacy at this early stage only if the proposed lead counsel is 'so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class.'" *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511-12 (E.D. Pa. 2004) (citation omitted).

Plaintiff has designated the law firms of Cohen & Malad, LLP, and Stranch, Jennings & Garvey, PLLC, (collectively, "Proposed Class Counsel") as class counsel for purposes of settlement. ( Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 3). Proposed Class Counsel have significant experience litigating class action matters and serving as class counsel. *See, e.g.*, *Cain v. CGM, L.L.C.*, No. 1:23-CV-02604-SEG, 2025 WL 2814398 (N.D. Ga. Mar. 10, 2025); *Lowe v. NBT Bank, N.A.*, No. 3:19-CV-1400-MAD-ML, 2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022); *Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May

14, 2021); *S. Cent. Bank v. Johnson*, No. 2023-CA-1171-ME, 2024 WL 3381384 (Ky. App. July 12, 2024).  Proposed Class Counsel therefore appear well-chosen and are qualified to represent adequately the interests of the proposed class.  Accordingly, Cooper shall be appointed as class representative.

### 2.    *Rule 23(b) Requirement*

In addition to satisfying Fed. R. Civ. P. 23(a), "[the] parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods.*, 521 U.S. at 614.  In this matter, Cooper seeks preliminary approval pursuant to Fed. R. Civ. P. 23(b)(3). (Pl.'s Mem. Supp. Mot. Prelim. Approval 6).

Under Rule 23(b)(3), a class action may be maintained only if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The predominance requirement of Fed. R. Civ. P. 23(b)(3) is akin to Fed. R. Civ. P 23(a)(2)'s commonality requirement because "both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues."  *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (citation omitted). The central question is whether the questions common to the class "[are] at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).  "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless."  *In re Cardizem CD Antitrust Litig*., 200 F.R.D. 297, 307 (E.D. Mich. 2001) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996)).  "Common questions need only predominate:  they need not be

dispositive of the litigation." *Id.* (internal quotation marks omitted) (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

In this instance, a class action is superior to adjudicating the controversy piecemeal. Common questions of fact and law predominate over any individual issues. Class members' claims all relate to whether the Challenged Fees charged by Limestone were in breach of contract and in violation of federal and state law. The proof necessary for each class member's claim would be similar to the proof from all other members of the class. Additionally, the injury incurred by each class member would not justify pursuing individual lawsuits against PB. *See Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 1:09-CV-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) ("The 'most compelling rationale for finding superiority in a class action' is the existence of a 'negative value suit.' A negative value suit is one in which the costs of enforcement in an individual action would exceed the expected individual recovery." (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001))).

In sum, the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) support the certification of the proposed class as defined in the Agreement. Accordingly, the Settlement Class is preliminarily certified for the purposes of settlement.

### B.  Appointment of Class Counsel

After a class is certified, class counsel must be appointed. Fed. R. Civ. P. 23(g). In making that appointment, a court must consider:

   (i)     the work counsel has done in identifying or investigating potential claims in the action;
   (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
   (iii)   counsel's knowledge of the applicable law; and
   (iv)    the resources that counsel will commit to representing the class . . . ."

Fed. R. Civ. P. 23(g)(1)(A).

As noted above, Proposed Class Counsel are the firms representing Cooper.  This matter was filed in 2023, and in 2024 the Parties attended a full-day mediation.  (Am. Compl. 1; Schubert Aff. ¶ 3).  As a result of the mediation, the Parties reached an "agreement in principle" to settle the matter. (Schubert Aff. ¶ 3).  The Parties then reached a final settlement agreement following "several months" spent negotiating terms.  (Schubert Aff. ¶ 3).  Proposed Class Counsel have put considerable time and energy into identifying and prosecuting potential claims.

Proposed Class Counsel also have significant experience in class actions and bank fee cases of similar size, scope, and complexity.  (Schubert Aff. ¶ 3; Pl.'s Mem. Supp. Mot. Prelim Approval 8-9).  This demonstrates Proposed Class Counsel's experience in handling similar matters and their knowledge of the applicable law.  Finally, Proposed Class Counsel have shown their willingness to devote substantial time and resources to representing the claims of the Settlement Class, as reflected by their representation of Cooper.  Accordingly, these firms satisfy the requirements of Fed. R. Civ. P. 23(g), and Proposed Class Counsel are designated as counsel for the Settlement Class.

### C.  Preliminary Approval of Proposed Settlement Agreement

Having been presented with the Agreement, the Court must determine whether to grant preliminary approval pursuant to Fed. R. Civ. P. 23(e).  The approval process involves two steps: first, a proposed settlement is reviewed to determine whether it warrants public notice and hearing; second, if notice and hearing are warranted, a proposed settlement may be approved only after a hearing.  *Manual for Complex Litigation* § 13.14 (4th ed. 2004); *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009).  "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Spine & Sports Chiropractic, Inc. v.*

*ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015) (quoting *Manual for Complex Litigation* § 13.14 (4th ed. 2004)).  Courts should apply sufficient scrutiny to avoid "rubber-stamp[ing]" a proposed settlement agreement, while still being "mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the parties' motion[] [is] premised."  *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 338.

The proposed settlement agreement must be "fair, reasonable, and adequate."  *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016); Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) outlines the factors courts must consider in making that determination:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> (A)     the class representatives and class counsel have adequately represented the class;
> (B)     the proposal was negotiated at arm's length;
> (C)     the relief provided for the class is adequate, taking into account:
> > (i)     the costs, risks, and delay of trial and appeal;
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, courts must consider factors articulated by the Sixth Circuit.  *See Peck v. Air Evac EMS, Inc.*, No. 5:18-615-DCR, 2019 WL 3219150, at *5, 7 (E.D. Ky. July 17, 2019).  These factors are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

### 1.    *Rule 23 Factors*

First, it appears that Cooper and Proposed Class Counsel have adequately represented the class.  Cooper and Proposed Class Counsel have litigated for two years and only agreed to settle with PB after discovery and a full-day mediation during which "each side vigorously advocated their positions" on the issues.  (Schubert Aff. ¶¶ 2-3; Joint Status Report 1, DN 56).  Further, Cooper has "actively participated in the prosecution of the case by providing information, conferring with counsel, and being involved in the settlement process." (Schubert Aff. ¶ 7).  As discussed above, Proposed Class Counsel are highly experienced class action litigators and there is ample evidence that both Cooper and Proposed Class Counsel would represent this class well and pursue these claims zealously if the case continued to trial.  (*See* Schubert Aff. ¶¶ 2, 5, 7-8).  This factor, therefore, supports preliminary approval.

Second, the Agreement was reached after a full-day mediation resulted in an agreement in principle and the specifics of the settlement were agreed upon after several further months of communication and negotiation.  (Schubert Aff. ¶ 3).  Nothing in the record suggests any kind of collusion between the Parties.  This reflects that the Agreement is the product of an arm's-length transaction.  *See Back v. Ray Jones Trucking, Inc.*, No. 4:22-CV-00005-GNS-HBB, 2025 WL 2422630, at *6 (W.D. Ky. Aug. 21, 2025) (finding this factor supported settlement after "two full days of mediation . . . followed by further negotiations"); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("[T]he parties engaged in extensive, arms-length negotiations for over four months, which . . . allowed the parties to fully explore their

respective factual and legal positions."). Thus, this factor also weighs in favor of preliminary approval.

Third, the Agreement appears to be adequate. Proposed Class Counsel considered the potential costs, risks, and delay of trial and appeal when entering into the settlement. (Schubert Aff. ¶¶ 7-8). Cooper's attorneys specifically acknowledge that "[h]ad a settlement not been achieved, the costs, risks, and delay of trial and appeal would be significant." (Schubert Aff. ¶ 8). Cooper and the Proposed Class Counsel weighed the certain amount of the settlement against the possibility that they might lose at trial or prevail and be awarded a lesser amount and have that amount further reduced by the costs of drawn-out litigation. (Schubert Aff. ¶ 8). Ultimately, Cooper and Proposed Class Counsel determined that "the [s]ettlement represents a meaningful, guaranteed recovery for [c]lass members now." (Schubert Aff. ¶ 8).

Additionally, the method of distributing the settlement to the class members appears effective. PB will identify the class members. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 9). Class members who are current accountholders at PB will receive their shares of the settlement as a credit to their accounts. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 7). Class members who do not have active accounts will receive their shares via check. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 7). No class member will be required to submit a claim to receive a share of the settlement. (Pl.'s Mem. Supp. Mot. Prelim. Approval 3).

Further, attorneys' fees were not negotiated until after the material terms of relief for the Settlement Class had been settled. (Schubert Aff. ¶ 9). Proposed Class Counsel worked on a contingency basis. (Schubert Aff. ¶ 9). "Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either (1) a percentage of the fund calculation, or (2) a lodestar/multiplier approach." *New England Health Care Emps. Pension Fund v. Fruit of*

*the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006) (citation omitted). Nevertheless, "courts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003). Proposed Class Counsel indicate that they anticipate requesting fees that are equal to one-third of the value of the settlement. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 3, 6, 18; Schubert Aff. ¶ 9). This is comparable to fees awarded in other class actions in the Sixth Circuit. *See Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *3-4 (W.D. Ky. Apr. 27, 2022) (finding attorneys' fees of 39% of the common fund reasonable); *New England Health Care*, 234 F.R.D. at 633 ("Fee awards in common fund cases typically range 'from 20 to 50 percent of the common fund created.'" (citation omitted)); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *11 (W.D. Ky. Dec. 22, 2009) (preliminarily approving attorneys' fees representing over 50% of the common fund). The proposed rate of up to one-third of the value of the settlement therefore appears reasonable.

Finally, Fed. R. Civ. P. 23(e)(3) requires that the "parties seeking approval . . . file a statement identifying any agreement made in connection with the proposal." The Agreement expressly states that it is the only agreement between the parties:

> This agreement, and all exhibits to it, constitute the entire agreement between the parties and can be modified only in writing. This agreement, and all exhibits to it, constitute the entire agreement between the parties, and supersede any prior understandings, agreements, or representations by or between the parties, written or oral, to the extent they relate in any way to the subject matter of this agreement.

(Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 12). Any side agreement would be rendered void by this integration clause. Thus, the Parties have not omitted any agreement required by Rule 23(e)(3). Because each of the subfactors supports preliminary approval of the Agreement, the fourth Rule 23(e) factor does so as well.

Next, the Agreement would "treat[] class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  While not every class member would receive the same amount, the amount varies only by the amount of Challenged Fees each class member was charged.  (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 7).  The greater the Challenged Fees charged to an individual class member, the greater that class member's share of the settlement.  (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 7).  This arrangement reflects treatment that is equitable relative to the level of injury suffered by each class member.  Accordingly, this factor weighs in favor of preliminary approval, as do all Rule 23(e) factors.

### 2.    *Sixth Circuit Factors*

Following consideration of the Rule 23 factors, a district court must also analyze the Sixth Circuit factors to ensure that a proposed settlement is "fair, reasonable, and adequate."  *Whitlock*, 843 F.3d at 1093.

First, a court considers the risk of fraud or collusion.  When considering this factor, "[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  *Thacker*, 695 F. Supp. 2d at 531 (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).  "When a 'settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair.'"  *In re Skechers Toning Shoe Prod. Liab. Litig.*, 2012 WL 3312668, at *9 (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 351).  As discussed above, this Agreement was the product of months of arm's-length negotiations.  Nothing in the record suggests any fraud or collusion in reaching the Agreement. Accordingly, this factor weighs in favor of approval.

The second factor requires consideration of the cost, complexity, and duration of litigation. The Parties have engaged in two years of costly litigation, including discovery, mediation, and

continued negotiations. (Schubert Aff. ¶ 3). Continuing to trial would only increase costs and delay any remedy for the class members. Proposed Class Counsel expressly acknowledge that Cooper has considered the uncertainties accompanying further litigation, including the possibility of high costs and delays. (Schubert Aff. ¶ 8). Thus, this factor supports preliminary approval of the Agreement.

Third, the Court must consider the sufficiency of the discovery conducted by the Parties. "If the parties have engaged in discovery, then a settlement is more likely to be fair and reasonable under the circumstances." *Green*, 2022 WL 1240432, at *5 (citation omitted); *see also Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898-99 (6th Cir. 2019) (concluding that the district court did not abuse its discretion when finding that informal discovery was sufficient for approval). The Parties here have engaged in discovery, which included Proposed Class Counsel deposing PB's corporate representative. (Pl.'s Mem. Supp. Mot. Prelim. Approval 3; Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 6). This weighs in favor of preliminary approval of the Agreement.

The fourth factor requires consideration of a plaintiff's likelihood of success were the case to continue. This is the most important factor, and "[t]he likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (internal quotation marks omitted) (citation omitted). In this instance, PB has entered into an agreement by which it will have to return just under $1 million to class members through debt relief and direct payments. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 3, 9; Schubert Aff. ¶ 4). The entry into such an agreement is an implicit recognition that Cooper and the class members could succeed on the merits at trial. *See Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2024 WL 1446468, at *10 (W.D. Ky. Apr. 3, 2024). Further, counsel for both Cooper and PB have

acknowledged the possibility that they may not prevail if litigation were to proceed.  (Schubert Aff. ¶ 8; Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 12).  Accordingly, this factor favors preliminary approval.

Fifth, a court must consider the opinions of the class representative and her counsel.  "In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."  *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *6 (W.D. Ky. May 13, 2013) (quoting *Thacker*, 695 F. Supp. 2d at 532).  Cooper and Proposed Class Counsel assert that the Agreement "unquestionably provides a favorable result to [c]lass [m]embers."  (Pl.'s Mem. Supp. Mot. Prelim. Approval 6).  Cooper and Proposed Class Counsel arrived at this opinion following discovery, mediation, and continued negotiations with PB.  (Pl.'s Mem. Supp. Mot. Prelim. Approval 6; Schubert Aff. ¶ 4).  Thus, this factor supports approval.

Sixth, courts must consider the reaction of absent class members.  Because the present motion relates to a preliminary, pre-notice stage agreement, the absent class members have not yet had an opportunity to voice any concerns.  This factor is neutral at this stage.  *See Green*, 2022 WL 1240432, at *5 ("At the pre-notice stage, the Court does not yet know how absent class members will respond.").

Finally, the Court must consider the public interest in granting preliminary approval of the settlement agreement.  "[T]here is a strong public interest in encouraging settlement of . . . class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 525 (E.D.

Mich. 2003) (quoting *Granada Inv.*, 962 F.2d at 1205). Thus, this final factor supports preliminary approval.

Both the Rule 23 and Sixth Circuit factors weigh in favor of preliminary approval of the Agreement. Accordingly, the Agreement represents a fair and reasonable settlement to a bona fide dispute and is preliminarily approved.

### D.    Proposed Notice Materials

As a result of the Court's preliminary approval, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e). This notice "must clearly and concisely state in plain, easily understood language" the following:

>  (i)    the nature of the action;
>  (ii)    the definition of the class certified;
>  (iii)    the class claims, issues, or defenses;
>  (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>  (v)    that the court will exclude from the class any member who requests exclusion;
>  (vi)    the time and manner for requesting exclusion; and
>  (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "The notice provided to class members must include enough information to allow the class members to make an informed choice of whether to approve or disapprove the settlement." *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 160 (S.D. Ohio 1992) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982)).

In relevant part, the proposed notice states:

> There has been a proposed class action settlement in the lawsuit entitled Cooper v. Peoples Bank, No. 3:23-cv-00389, which is pending in The United States District Court for the Western District of Kentucky. In the lawsuit, Plaintiff alleged that, from May 3, 2013 to April 30, 2023, Limestone Bank improperly charged (1) [o]verdraft fees incurred during the Class Period on debit card transactions authorized on sufficient funds and settled on negative funds in the same amount for

which the debit card transaction was authorized ("APSN Fees"); and (2) fees charged as a result of a verification process on an account in which a third-party deposited and debited minimal amounts of equal funds in less than 24 hours ("Verify Bank Fees"). Defendant denies any wrongdoing, but it has agreed to settle to avoid the burden and expense of litigation.

(Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 18). This notice explains who is included in the Settlement Class and provides contact information for the claims administrator, should any further clarification be needed` to determine whether a recipient is included in the Settlement Class. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 18, 20-22, 26). The notice also provides class members with instructions on how they can object or opt-out of the settlement. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 24-25). The notice informs class members that they may retain an attorney to appear at the final approval hearing. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 26). Finally, the notice informs the class members of the binding effect of the class judgment. (Pl.'s Unopposed Mot. Prelim. Approval Ex. 1, at 26).

The notice conforms with the requirements of Fed. R. Civ. P. 23(c) and is therefore approved.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (DN 72) is **GRANTED**, and Plaintiff's Motion for Hearing (DN 83) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** as follows:

1.     Terms capitalized herein and not otherwise defined shall have the meanings ascribed to them in the Agreement.

2.     This Court has jurisdiction over the subject matter of this lawsuit and jurisdiction over the Class Representative and Defendant in the above-captioned case.

3.     The Court finds that, solely for the purposes of settlement and notice, the requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been met, specifically:

     a.    The class is so numerous that joinder of all members is impracticable, as there are thousands of Class Members;

     b.    There are questions of law or fact common to the class based upon the claims raised in the lawsuit relating to the Challenged Fees;

     c.    The claims of the Class Representative are typical of the claims of the Class because they arise from the same Challenged Fees practices;

     d.    The Class Representative and Class Counsel will fairly and adequately protect the interests of the Class;

     e.    Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, as the claims center on the Challenges Fees practices.

     f.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, as the claims are numerous but each claim individually is not large.

4.     The Court therefore **CERTIFIES** the following Plaintiff Class for settlement purposes only:

All persons who were charged one or more Challenged Fees by Limestone Bank during the Class Period.

The Class Period is May 3, 2013, to April 30, 2023, and Challenged Fees means:  (i) Overdraft fees incurred during the Class Period on debit card transactions authorized on sufficient funds and settled on negative funds in the same amount for which the debit card transaction was authorized ("APSN Fees"); and (ii) Fees charged as a result of a verification process on an account in which

a third-party deposited and debited minimal amounts of equal funds in less than 24 hours ("Verify Bank Fees"). Excluded from the Class are Defendant's current and former officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns, along with all judges who have presided over this matter and their immediate families and judicial staff. The Court appoints Robin Cooper as Class Representative, and the Court appoints Cohen & Malad, LLP, and Stranch, Jennings & Garvey, PLLC, as Class Counsel.

5.      The Court finds that the terms of the settlement are within the range of a fair, reasonable, and adequate compromise under the circumstances of this case. The Court therefore preliminarily approves the Settlement and directs the parties to the Agreement to perform and satisfy the terms and conditions that are triggered by such preliminary approval.

6.      The Court approves the form and method of notice provided for in the Agreement and finds that it complies with the applicable rules and the requirements of Due Process. The Court appoints Verita Global as Settlement Administrator and orders the Settlement Administrator and the Parties to implement the notice program set forth in the Agreement. Subject to approval of invoices by Class Counsel, the Settlement Administrator is authorized to be paid for services as provided in the Agreement.

7.      A final approval hearing (the "Final Approval Hearing") shall be held before the undersigned at **11:00 AM ET**, on **March 19**, **2026**, at the Gene Snyder United States Courthouse, 601 W. Broadway, Louisville, KY 40202,  for the purpose of:  (a) determining whether the Agreement is fair, reasonable, and adequate and should be finally approved; (b) determining whether a Final Approval Order should be entered; and (c) considering Class Counsel's application for an award of attorneys' fees and expenses and any service awards from the Settlement Fund. The Court may adjourn, continue, and reconvene the Final Approval Hearing pursuant to oral

announcement without further notice to the Class, and the Court may consider and grant final approval of the Settlement, with or without minor modification and without further notice to the Class.

8.    Members of the Settlement Class shall be afforded an opportunity to request exclusion from the Class.  A request for exclusion from the Class must comply with the requirements for form and timing set forth in the Detailed Notice included in the Agreement. Members of the Settlement Class who submit a timely and valid request for exclusion shall not participate in and shall not be bound by the Settlement.  Members of the Settlement Class who do not timely and validly opt out of the Class in accordance with the Detailed Notice shall be bound by all determinations and judgments in the action concerning the Settlement.

9.    Class Members who have not excluded themselves shall be afforded an opportunity to object to the terms of the Agreement.  Any objection must comply with the requirements for form and timing set forth in the Detailed Notice included in the Agreement.  If the Class Member or his or her Counsel wishes to speak at the Final Approval Hearing, the member must comply with the requirements set forth in the Detailed Notice.

10.    Any Class Member who does not make his or her objection known in the manner provided in the Agreement and Detailed Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Agreement.

11.    Any request for intervention in this action for purposes of commenting on or objecting to the Agreement must meet the requirements set forth above, including the deadline for filing objections, and also must be accompanied by any evidence, brief, motion, or other materials the proposed intervenor intends to offer in support of the request for intervention.

12.     Any lawyer intending to appear at the Final Approval Hearing must be authorized to represent a Class Member, must be duly admitted to practice law before this Court, and must file a written appearance.  Copies of the appearance must be served on Class Counsel and counsel for Defendant.

13.     Not more than ten (10) days after the Exclusion Deadline, the Settlement Administrator shall provide Class Counsel a Notice of Settlement Exclusions, listing the names of all persons or entities who timely and validly excluded themselves from the Agreement, and Class Counsel shall promptly file the list with the Court.

14.     Prior to the Deadline to File Motion for Fees, Class Counsel shall file a motion for approval of the attorneys' fees, expenses, and service awards to be paid from the Settlement Fund, along with any supporting materials.

15.     If the Settlement does not become effective or is rescinded pursuant to the Agreement, the Settlement and all proceedings had in connection therewith shall be without prejudice to the status quo ante rights of the Class Representative and Defendant, and all Orders issued pursuant to the Settlement shall be vacated.

16.     The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Agreement.

**Greg N. Stivers, Judge**
**United States District Court**
December 5, 2025

cc:     counsel of record